**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 97-4448

ROBERT LEE YOUNG, JR., a/k/a Robo,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CR-97-278)

Submitted: January 27, 1998

Decided: March 10, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Dale L. DuTremble, Charleston, South Carolina, for Appellant. J.
Rene Josey, United States Attorney, Brucie H. Hendricks, Assistant
United States Attorney, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Robert Lee Young, Jr., pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C.A. §§ 922(g)(1) and 924(e) (West 1994 & Supp. 1997). He was found to be an armed career offender and was sentenced to 216 months imprisonment. His guilty plea was conditioned on the disposition of a motion to suppress the evidence, and he now appeals the district court's denial of that motion. Finding no error, we affirm.

In the early months of 1996, the Tri-county Narcotics Task Force learned from an informant that Young was selling drugs from his home and that he was armed and dangerous. Attempts by undercover officers to purchase drugs from Young were unsuccessful.

In September 1996, agents of the Task Force successfully purchased drugs from Young by using a confidential informant provided by the Drug Enforcement Administration. The informant and his vehicle were searched and the informant was wired and given forty dollars in government funds to make a drug purchase. The agents then maintained visual and audio surveillance of the informant. As planned, the informant drove to a neighborhood store in search of a particular contact who would introduce him to Young and vouch for him so that the informant could make the drug purchase. The informant could not locate the contact, but found another individual, Michael Williams, who knew Young and agreed to accompany the informant to Young's residence.

The informant and Williams drove in the informant's vehicle to Young's home. Visual surveillance into the home was impossible and the audio transmission was of poor quality due to a loud television that was on inside the home. After the alleged transaction and still under visual surveillance, the informant and Williams left the house, and the informant dropped Williams off at the store where he had originally been picked up. Williams was never searched or otherwise controlled by law enforcement officers. The informant returned to the Task Force office where he was debriefed and searched. The informant did not have the forty dollars, but he did have nine rocks of

2

crack cocaine. The informant also wrote a statement averring that he had purchased crack cocaine from Young.

Later that same evening, law enforcement officers approached a state magistrate seeking a search warrant for Young's residence. In addition to the affidavit, the magistrate relied on his understanding that the informant was related to the DEA and that the law enforcement officers were experienced and could identify crack cocaine. The warrant was issued before midnight and executed at approximately 1:00 a.m. that morning.

When the officers arrived at Young's residence, they knocked and announced "Sheriff's Department, Sheriff's Department." After two to three seconds without any response, the officers forcefully entered the residence where they found Young hiding in his bedroom closet covered with a blanket. The officers recovered from the home a gun from the bed in the room where Young was hiding, a pistol, drug paraphernalia, drug residue, a notebook with names and addresses, a police scanner, ammunition, and $225 in cash. The marked forty dollars used by the informant was not found in Young's home.

Young was arrested and charged with violating 18 U.S.C. §§ 922(g)(1) and 924(e). A federal magistrate judge found probable cause to believe that Young committed the firearms violation and denied Young's motion to suppress the evidence. The district court affirmed the magistrate judge's recommendation. Young then entered a conditional guilty plea, reserving the right to appeal the denial of the suppression motion. He timely filed a notice of appeal from the denial of the suppression motion.

A district court's determination of probable cause under the Fourth Amendment is an issue of law that this Court reviews de novo. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Young first argues that the search warrant did not contain probable cause because it lacked sufficient information about the reliability of the informant. He contends that the officers presented the magistrate with a "bare bones" affidavit, that he received no sworn, oral statement to supplement the affidavit, and that the magistrate merely acted as a rubber stamp in approving the affidavit and issuing the warrant.

3

An affidavit supporting a warrant must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. See Franks v. Delaware, 438 U.S. 154, 165 (1978). In reviewing a magistrate's probable cause determination, a court must accord great deference to the magistrate's assessment of the facts. See United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (citations omitted). The magistrate need only make a "common sense determination of whether `there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The probable cause standard "does not demand showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). Finally, "[b]ecause of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to `invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner.'" United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)) (other citations omitted).

Here, the probable cause affidavit stated that the informant was working under the supervision of an area drug task force, and the officers informed the magistrate that the informant was supplied by the Drug Enforcement Administration. Further, the warrant provided that the informant had made a "control purchase of a white rock substance believed to be crack cocaine" from Young at Young's home at the behest of the officers. We find that the district court properly concluded that the affidavit was sufficient to establish probable cause, and that the magistrate could have concluded from statements in the affidavit that the informant was honest and reliable. See Gates, 462 U.S. at 238.

Young next argues that the warrant was invalid because it contained material omissions of fact that were knowingly and recklessly withheld from the magistrate. Specifically, he points to the description in the affidavit of a "control purchase." Young contends that this description is inaccurate because of the presence of the "unknown, unsearched, uncontrolled third party," Williams, who was permitted to be present at the alleged drug transaction. The law enforcement officers who sought the warrant did not inform the magistrate of Wil-

4

liams's participation. Young also points to the informant's criminal history, which the officers did not relay to the magistrate, and the magistrate's mistaken belief that the informant was somehow tied to law enforcement or was a police officer. Finally, Young asserts that the officers should have told the magistrate that the transaction may in fact have occurred at the convenience store where the informant picked up Williams, and not in Young's home.

To challenge the validity of a facially valid warrant, Young must establish by a preponderance of the evidence that the officers engaged in a "deliberate falsehood or [ ] reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Franks, 438 U.S. at 171. Allegations of negligence or innocent mistake, however, are insufficient to attack the validity of the affidavit. See id. In addition, there is a presumption of validity with respect to the affidavit supporting a search warrant. See id. The district court's finding that the statements were not deliberately false or in reckless disregard for the truth is reviewed under the clearly erroneous standard. See United States v. Jones, 913 F.2d 174, 176 (4th Cir. 1990).

As the district court properly found, Young presented no evidence establishing that the omission constituted a deliberate falsehood or that the officers had a reckless disregard for the truth. The record does not reflect that the officers intentionally omitted the information about Williams's participation and the degree of control that the officers exercised over the transaction. There is also no support in law for Young's contention that the officers were required to describe the informant's criminal history to the magistrate.

Next, the magistrate's belief that the informant was a police officer or tied to law enforcement is not totally incorrect--even though the informant was not a police officer, the DEA did supply the informant to the local police. Furthermore, the magistrate testified that the officers were acting in good faith when they sought the search warrant, and that if the same scenario was presented to him again, he would still issue the warrant. Finally, Young's assertions that the officers should have told the magistrate that the drug transaction could not be confirmed by the audio tape, and that the drug transaction may have occurred at the convenience store instead of Young's home, are also meritless. Based on the information deduced from the tape recording,

5

in addition to the informant's statement that the transaction occurred in Young's home, we find that it was reasonable for the police officers to believe a drug transaction occurred, and that it occurred in Young's home. Furthermore, if the officers believed the transaction occurred at Young's home, there is no reason why they would tell the magistrate that they believed it occurred at the convenience store. Indeed, if the informant had purchased drugs from Williams at the convenience store, he would have had no reason to go to Young's house. Accordingly, the district court's finding that the officers did not engage in a deliberate falsehood or reckless disregard for the truth is not clearly erroneous.

Young's final claim is that the search was unreasonable because the officers violated the knock and announce rule of 18 U.S.C. § 3109 (1994). Specifically, he alleges that the officers did not wait long enough for a response before using force to enter Young's home after announcing their presence. One element of the reasonableness inquiry governing the lawfulness of searches under the Fourth Amendment is that police officers must knock and announce their presence before entering the premises to be searched. See Wilson v. Arkansas, 514 U.S. 927, 934 (1995). However, the principle is not a rigid rule and allows for unannounced entry when there are important countervailing law enforcement interests such as the safety of the officers or prevention of the destruction of evidence. See id. at 936.

There is no law regarding how much time must elapse before law enforcement officers may use force to enter a dwelling after announcing their presence. In this instance, there was testimony that the officers only waited a few seconds before using force to enter Young's home. However, the officers had reason to believe that both drugs and weapons would be found in Young's residence. Nine rocks of crack cocaine had been purchased from Young inside his home earlier that day. Also, seven months earlier, the police officers had received information from an informant that advised that "a large amount of guns [had] been observed inside [Young's] residence and that [Young had] guns next to his side at most times during visits to the residence." Furthermore, this Circuit has found that "it is not unreasonable to recognize that weapons have become `tools of the trade' in illegal narcotics operations." United States v. Nelson, 6 F.3d 1049, 1056 (4th Cir. 1993) (citations omitted). In this case, execution of the

6

search warrant occurred late at night, drugs had been purchased from the residence earlier that same day, and there was some indication that Young was armed. Thus, we find that the entry was reasonable.

Accordingly, we affirm the district court's denial of Young's motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

7